O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA R.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security,<br><br>　　　　　Defendant. | Case No. 5:19-cv-01537-KES<br><br>MEMORANDUM OPINION AND<br>ORDER |

## I.

## PROCEDURAL BACKGROUND

In February 2016, Plaintiff Susana R. ("Plaintiff") applied for Title XVI supplemental security income alleging an onset date of June 1, 2014, at age 38.[1] Administrative Record ("AR") 275-83.  On October 10, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert ("VE").  AR 84-108.  On December 12, 2018, the ALJ issued an unfavorable decision.  AR 64-83.

---

[1] Plaintiff previously applied for disability benefits, and her application was denied in November 2010.  AR 308.

1

The ALJ found that Plaintiff suffered from the severe impairments of cervical and lumbar disorders; gastrointestinal disorders, liver cirrhosis, anemia, hypothyroidism, and mental impairments variously diagnosed to include affective and anxiety disorders.  AR 70.  Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she could only understand, carry out and remember simple instructions; make commensurate work decisions; and respond appropriately to supervision, co-workers and work situations.  AR 72.  The ALJ also found that Plaintiff could deal with routine changes in work settings, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the day.  Id., citing 20 C.F.R. § 416.967(b) (defining light work).

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could not do her past relevant work as a cashier/checker and receptionist.  AR 76.  The ALJ found, however, that Plaintiff could do other light jobs that existed in significant numbers in the national economy: garment folder, steam presser, and small parts assembler.  AR 77.  The ALJ concluded that Plaintiff was not disabled.  AR 78.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ's RFC determination is still supported by substantial evidence in light of new evidence submitted but not considered by the Appeals Council based on a finding that it was immaterial (i.e., it related to a time period after the ALJ's decision).

Issue Two: Whether the ALJ erred in discounting Plaintiff's subjective symptom testimony.

(Dkt. 22, Joint Stipulation ["JS"] at 4.)

# III.

## SUMMARY OF PLAINTIFF'S TREATING RECORDS

Plaintiff claimed disability based on pancreatitis, anxiety, depression, and insomnia.  AR 311.

The AR contains numerous records from trips Plaintiff made to the emergency room ("ER") in 2015-2017 complaining of abdominal pain.  Typically, these records show that Plaintiff initially complained of severe pain (e.g., rated 10/10), but even with scans, blood tests, and other diagnostic tools, doctors could not find any serious abdominal issue to treat.  They would typically prescribe pain medication and discharge her home after her pain decreased to 1/10.  See, e.g., AR 1230 (ER visit in August 2015); AR 420-442 (June 2016 ER visit: "patient is on PO pain management but refused to take meds, instead prefer IV pain meds" [AR 419]); AR 1586 (by December 2016, "Pt. is well know[n] to the ER as she has chronic abd. pain, chronic pancreatitis, and chronic anemia," and "patient requests Percocet" [AR 1591]); AR 1579-83 (January 2017: noting "frequent visits to Emergency Department for abdominal pain" [AR 1583] with "6 CT scans of her abdomen and pelvis since March 2016"; calling for a ride "so she can safely receive opiate pain medication" [AR 1579]); AR 1290-95 (May 2018: ER visit for abdominal pain, but doctors could not find a "serious etiology").

Plaintiff's treating records for abdominal pain are also notable because they consistently document a normal gait, lack of complaints about other kinds of pain, and no serious psychological symptoms.  See, e.g., AR 1230-33 (August 2015: Plaintiff denied musculoskeletal problems and psychiatric problems; she was negative for anxiety or depression); AR 420 (June 2016: normal range of motion ["ROM"] in her extremities and a normal musculoskeletal inspection); AR 1599-1600 (December 2016: "normal ROM with gait – no back pain with movement"); AR 1574 (January 2017: painless ROM in neck and back in January 2017); AR 1321-22 (January 2018: Plaintiff denied depression and problems with self-care;

no motor deficits).

By January 2018, the pattern is the same.  Plaintiff complains of 10/10 abdominal pain (AR 1304) but she can walk without difficulty (AR 1308, 1324) and has a "painless" ROM in her neck (AR 1519) and back (AR 1520).  Her musculoskeletal system was "unremarkable."  AR 1538.

In March 2018, however, Plaintiff complained that "cold weather has been affecting her all over body pain" and making it "difficult to perform her daily activities."  AR 1204.  She rated her back pain as 9/10.  AR 1209.  Nevertheless, she still displayed a normal gait.  AR 1207, 1212.  She registered a SOAPP-R ("Screener and Opioid Assessment for Patients with Pain – Revised") score of 25, indicating that she was at high risk of opioid abuse.  AR 1213 ("Pt. is requesting opiate medications today and she was told to follow up with her PCP for this request noting we will only provide non-opioid pharmacotherapy."); see also AR 1204 ("Pt stated that her PCP refused to give her pain medication.").

About one month later, she went to the ER complaining that she "slipped on a wet spot" in her apartment building's laundry room and "landed on her back. She thinks she might have hit her head and twisted her neck" and injured her right side.  AR 1199, 1491.  She reported right arm pain and neck pain.  AR 1491. When examined by ER staff, however, she exhibited good ROM with her right arm and no obvious motor deficits.  AR 1492.  A CT of her lumbar spine revealed only "mild degenerative changes."  AR 1494, 1503; compare AR 1463 (finding "mild spondylosis of the lumbar spine" about a year earlier in June 2017).  A CT of her cervical spine revealed no abnormalities.  AR 1494-95.  The ER staff observed that she was "able to ambulate without any difficulty."  AR 1497; see also AR 1202 ("normal gait"); AR 96 ("I went to the emergency hospital they took a CT scan, they didn't find anything.").  She was discharged with a prescription for "Norco per her request."  AR 1497.

Plaintiff testified that an MRI after her April 2018 fall is what caused her

4

1  doctors to notice a "slipped disc."  AR 95.  She continued to work taking care of

2  her mother, but she avoided lifting.  AR 96.  By July 2018, she still had a "normal"

3  gait.  AR 1197.

4        In August 2018, Plaintiff underwent anterior and posterior spinal fusion

5  surgery.  AR 12[2]; see also AR 260 (letter from physician stating that Plaintiff

6  underwent surgery on August 16, 2018).  The Administrative Record does not

7  appear to include records from this surgery.  Plaintiff underwent additional

8  treatment in September 2018.  AR 44 (Plaintiff admitted to hospital on 9/22/18);

9  AR 49 (Plaintiff discharged on 9/27/18 after unspecified treatment for "abdominal

10  fluid collection" with instructions to follow up with her primary care physician in

11  two weeks); AR 137 (same).  Plaintiff testified that the September 2018 procedure

12  was to "remove some fluid out of my spine because I had an infection, had water in

13  my abdomen …."  AR 96.

14       At the hearing on October 10, 2018, Plaintiff complained of cervical and

15  lumbar back pain.  AR 97.  Plaintiff also started to have "knee problems and

16  they're hurting really, really bad." AR 97.  After the surgery, she used a walker to

17  ambulate.  AR 98.  She testified that prior to the surgery she could lift 5-20 pounds.

18  AR 100.

19       Before the August 2018 surgery, she "didn't have to lay down too much."

20  AR 101.  She would typically get "eight hours sleep" and then be able to do chores

21  like laundry, grocery shopping, and assisting her mother.  Id.  After the surgery,

22  sitting or standing made her "really, really tired" and she needed to lay down to

23  elevate her feet and apply a heating pad to her back.  AR 100-01.

24       In January 2019, Plaintiff reported to a new doctor that she had a second

25

26            [2] Some of the records cited herein were not included by the Appeals Council
27  as part of the administrative record.  The Court nonetheless references them for
   completeness.
28

5

1  surgery on November 27, 2018.  AR 12.  Two days later, she had "further
2  revisionary surgery."  AR 12 (per Plaintiff's own reporting).  After that procedure,
3  she complained of right-leg numbness and weakness.  Id.  On January 27, 2019,
4  she had a "fourth procedure" for a wound infection.  Id.

**IV.**

**DISCUSSION**

**A. Issue One: New Evidence.**

**1. Summary of Relevant Administrative Proceedings.**

Plaintiff submitted medical records dating from early 2019 to the Appeals
Council.  AR 8-58.  They include records from Dr. John Skubic of Arrowhead
Orthopedics dated March 29, 2019.  AR 10.  Per those records, Plaintiff told Dr.
Skubic that she suffered from lower back pain rated 9/10 since a slip and fall 1-2
years ago (apparently referring to her laundry room fall on April 30, 2018), but her
"condition [was] worsening."  AR 10.  No medications or treatments had helped,
she was using a wheelchair, and she was considering another back surgery.  AR
10-11.  A straight-leg raising test was negative.  AR 11.  Dr. Skubic observed that
Plaintiff had reduced motor strength in her right leg, but not in her left leg.  Id.

At that time, Dr. Skubic had not reviewed any of Plaintiff's prior medical
records.  AR 12.  Dr. Skubic did review electromyography ("EMG") testing
conducted on March 13, 2019, which he characterized as showing "severe injury
affecting right L4 and L5 nerve roots and to lesser extent the S1 nerve root with
evidence of recent denervation …."  AR 12.  Dr. Skubic concluded, "It would
appear that she sustained significant neurologic injury during her second surgical
procedure the nature of which has not been made clear to her."  Id.  He
recommended "aggressive physical therapy in an outpatient treatment facility."  Id.

Plaintiff submitted no records from the November 2018 and later procedures
described by Dr. Skubic and no records of subsequent physical therapy, if any.

The Appeals Council determined not to make this evidence part of the AR,

1   finding that the ALJ decided the case "through December 12, 2018. This
2   additional evidence does not related to the period at issue. Therefore, it does not
3   affect the decision about whether you were disabled beginning on or before
4   December 12, 2018." AR 2; see also AR 5 (listing new exhibits accepted by the
5   Appeals Council and not including Dr. Skubic's records).

6           **2. Summary of the Parties' Arguments.**

7           The ALJ found, "Although the claimant is still recovering from a recent
8   back surgery, it is anticipated she will recover similarly to prior surgery."[3] AR 75.
9   Plaintiff characterizes this as a finding that Plaintiff's back condition did not meet
10  the 12-month durational requirement because of her anticipated recovery.[4] (JS at
11  5.) Plaintiff argues that the new evidence submitted to (but rejected by) the
12  Appeals Council proves that Plaintiff had additional surgery in November 2018
13  that caused right leg "weakness" or "paralysis." (Id.) From this, Plaintiff
14  concludes that the ALJ's finding of an anticipated recovery is "no longer supported
15  by substantial evidence." (Id.) Plaintiff also argues that this is not evidence of a
16  new injury, but rather evidence that her "spine has continued to deteriorate surgery
17  after surgery after surgery." (Id. at 7.)

18          Defendant responds that if November 2018 medical treatment for which
19  there are no records caused new injuries to Plaintiff, such as right-leg nerve
20  damage and paralysis, and those injuries were getting "worse" in January 2019
21  (AR 10), then she should file a new application. (JS at 9-10.) Such new injuries

22  _____
23          [3] The ALJ was referring to Plaintiff's August 2018 surgery and some follow-
    up procedure(s) to treat infection about which Plaintiff testified at the October
24  2018 hearing. AR 75, 96.

25          [4] The Social Security Act defines disability as the "inability to engage in any
26  substantial gainful activity by reason of any medically determinable physical or
    mental impairment which can be expected to result in death or … can be expected
27  to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)
    (1)(A), 1382c(a)(3)(A).
28

1   have no tendency to show that Plaintiff's back pain was disabling on or before

2   December 12, 2018.  (Id.)

3   ### 3.  Rules Governing Consideration of New Evidence.

4       Plaintiff argues that because the Appeals Council "considered" the new

5   evidence she presented, this Court must accept it as part of the administrative

6   record when evaluating under sentence four of 42 U.S.C. § 405(g) whether the

7   ALJ's decision is supported by substantial evidence.  (JS at 6.)

8       Plaintiff misstates the law.  When a claimant presents new evidence to the

9   Appeals Council, but the Appeals Council does not make it part of the

10  administrative record that was considered in declining review (as the Appeals

11  Council did here [AR 2]), then the District Court proceeds under sentence six of 42

12  U.S.C. § 405(g).  See Bales v. Berryhill, 688 F. App'x 495, 496 (9th Cir. 2017)

13  ("Bales contends that two medical reports she submitted to the Appeals Council

14  are part of the administrative record before this court. We disagree. Because the

15  Appeals Council did not consider Bales's new medical records, this evidence did

16  not become part of the administrative record. . . . Bales has not met her burden of

17  demonstrating materiality and good cause for remand under 42 U.S.C. § 405(g).");

18  Neuhauser v. Colvin, No. C14-5421 BHS, 2015 WL 5081132, at *3 (W.D. Wash.

19  Aug. 27, 2015) (citing various cases applying sentence six review in similar

20  circumstances).

21      Under sentence six of 42 U.S.C. § 405(g), district courts have jurisdiction to

22  remand for the consideration of new evidence only if the new evidence is

23  "material" and there was "good cause for the failure to incorporate such evidence

24  into the record."  Wood v. Burwell, 837 F.3d 969, 977-78 (9th Cir. 2016); 42

25  U.S.C. § 405(g) (providing that the "court may . . . at any time order additional

26  evidence to be taken before the Commissioner of Social Security, but only upon a

27  showing that there is new evidence which is material and that there is good cause

28  for the failure to incorporate such evidence into the record in a prior proceeding.").

The Ninth Circuit has interpreted sentence six "materiality" as follows: "The new evidence must bear 'directly and substantially on the matter in dispute.' Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982).  [Claimants] must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).  For the new evidence to bear directly and substantially on the matter in dispute, it must relate to the relevant time period. See Bruton v. Massanari, 268 F.3d at 827 (later determination based on "different medical evidence" for a "different time period" was not "material" for purposes of sentence six remand); Ward, 686 F.2d at 765 (evidence dated two years after claimant was found able to work, while possibly probative of the nature of the disease or disability, was not material to the termination of benefits because the evidence appeared to indicate, at most, a more recent deterioration of condition).

### 4. Plaintiff's New Evidence is Not Material.

Applying the above-cited authorities, Plaintiff's new evidence is not material.  It does not show that the same spinal impairments that existed before her August 2018 surgery (i.e., mild degenerative changes, as evidenced by multiple CT scans, which did not prevent Plaintiff from grocery shopping, walking without assistive devices, and working as an in-home caretaker) have persisted and worsened even after that corrective surgery.  Rather, it suggests that Plaintiff sustained some new "neurologic" injury in November 2018 that by January 2019 had caused right-leg paralysis (AR 12), a condition Plaintiff never mentioned at the October 2018 hearing.  The ALJ's prediction that Plaintiff would recover from her August 2018 back surgery is not undermined by Plaintiff's allegation that she suffered a new injury resulting from a surgical procedure in late November 2018.

Not only does the new evidence relate to a new injury, but also it is scant and incomplete, such that it likely would not have changed the ALJ's decision, even if submitted earlier.  The records submitted from Dr. Skubic contain

1   Plaintiff's own recitation of her medical history without any supporting imaging or

2   surgical records.[5]  It is also worth noting that Plaintiff did not testify at the October

3   2018 hearing that she experienced right leg paralysis following her August 2018

4   surgery; she complained of bilateral knee pain without specifying a cause (AR 97),

5   despite Dr. Skubic interpreting later EMG testing as showing no left leg problems

6   (AR 11).  Thus, any such right leg paralysis was apparently caused on or after the

7   November 27, 2018 surgery.  Overall, Plaintiff's new evidence is so incomplete

8   and uncertain that it does not rise to the level of materiality and does not warrant

9   remand.

10      **B.** **Issue Two:  Plaintiff's Subjective Symptom Testimony.**

11          **1.  Rules Governing Consideration of Symptom Testimony.**

12          The Ninth Circuit has "established a two-step analysis for determining the

13   extent to which a claimant's symptom testimony must be credited."  Trevizo v.

14   Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine

15   whether the claimant has presented objective medical evidence of an underlying

16   impairment 'which could reasonably be expected to produce the pain or other

17   symptoms alleged.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)

18   (citation omitted).  "Second, if the claimant meets the first test, and there is no

19   evidence of malingering, 'the ALJ can reject the claimant's testimony about the

20   severity of her symptoms only by offering specific, clear and convincing reasons

21   for doing so.'"  Id. (citation omitted).  If the ALJ's assessment "is supported by

22   substantial evidence in the record, [courts] may not engage in second-guessing."

23   Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

24   _____

25      [5] For example, Plaintiff testified that she was released from the hospital after
    a second surgical procedure on September 27, 2018 (AR 96) which is consistent
26   with hospital records (AR 49).  Plaintiff told Dr. Skubic that she had a procedure
    on *November* 27, 2018.  AR 12.  There are no records from any November 2018
27   procedure.  It is possible (although not definite) that Plaintiff confused these dates.

28

### 2. Summary of Plaintiff's Testimony and the ALJ's Decision.

The ALJ noted that Plaintiff testified that after her alleged onset date, Plaintiff "was working as an in home care provider for her mother, working three hours per day seven days per week until August 2018 when [Plaintiff] underwent back surgery," receiving payment from In-Home Support Services ("IHSS").  AR 69.  Plaintiff started caring for her mother in 2013 but stopped in October 2014, resuming that work in April 2016 and continuing it through August 2018.[6]  AR 91-92.  The ALJ noted Plaintiff's testimony that she helped "with activities and tasks such as medications, laundry, transportation, bathing, and dressing."  AR 69, citing AR 90-92; AR 101-102 (before August 2018 surgery, she did laundry, grocery shopped, and took her mother to the doctor via Uber or Lyft); AR 366 (in 2016, her mother was age 53).  The ALJ determined that this work did not rise to the level of substantial gainful activity ("SGA").  The ALJ also opined, "I see no reason she could not have done this job fulltime."  AR 76.

The ALJ noted Plaintiff's testimony that at the time of the hearing, she lived with her mother and her three children, age 17 (nearly 18), 10, and 5.  AR 72, citing AR 100.  Previously, Plaintiff's boyfriend stayed with them.  AR 1173 (Plaintiff broke up with a boyfriend around March 2016); AR 614 (in September 2016, a boyfriend was staying with her family).  Plaintiff managed funds for her household.  AR 614-15.  While Plaintiff assisted her mother, sometimes her mother accompanied Plaintiff to Plaintiff's medical appointments.  See, e.g., AR 1194.  Although at the time the state was paying her to be an in-home caretaker for her mother, in September 2016, Plaintiff told the phycological examiner that she did "not do household chores, errands, shopping and cooking."  AR 615.  In January

---

[6] In a July 2016 Job History form, Plaintiff stated that she worked as a cashier at Walmart from 2007 to 2011 and as an in-home caretaker from January 2013 to October 2014.  AR 312.  She did not disclose that she had started to work again as an in-home caretaker in April 2016.

1    2018, Plaintiff reported that her grandmother had recently passed and she was in

2    the midst of a custody battle for her children.  AR 1154.  In May 2018, she

3    requested a referral to obstetrics/gynecology to reverse a tubal ligation done in

4    2014, and she also asked for a follow-up with a surgeon to remove loose skin on

5    her abdomen following 2005 gastric bypass surgery.  AR 1151-52.

6           The ALJ found that Plaintiff's "statements about the intensity, persistence,

7    and limiting effects of [her] symptoms are not entirely consistent with the medical

8    evidence and other evidence in the record for the reasons explained in this

9    decision."  AR 73.  As reasons, the ALJ included **[1]** "the medical records reflect

10   no mental health treatment other than medications, improvement after back

11   surgeries, and mostly conservative treatment for her gastrointestinal disorders";

12   and **[2]** "claimant has demonstrated abilities through her work as a caregiver for

13   her mother working from April 2016 to August 2018.  Although this work was

14   part-time, the hours were dictated by the IHSS program."  AR 73.

15          ALJ cited the factors in 20 C.F.R. §§ 404.1429 and 416.929.  AR 76.  The

16   ALJ concluded, "I have afforded less weight to the subjective allegations of the

17   claimant and more weight to the objective medical evidence of record."  AR 76.

18                    **3.   Analysis of the ALJ's Stated Reasons.**

19                        a.   Course of Treatment and Objective Medical Evidence.

20          The ALJ noted that Plaintiff never received specialized mental health

21   treatment.  AR 73.  At a routine check-up in May 2018, Plaintiff reported that her

22   depression and anxiety were "well-managed" with medication.  AR 74, citing AR

23   1151.  Plaintiff had a history of taking Xanax (AR 563 [had stopped amitriptyline,

24   an antidepressant, and was not taking Xanax in August 2016]; AR 613 [taking

25   Xanax in September 2016]; AR 115 [taking Xanax in January 2018]), but doctors

26   treating her back and stomach issues never noted any serious psychological

27   symptoms.  This course of treatment is a clear and convincing reason to discount

28   Plaintiff's claim to have suffered from disabling depression and anxiety.

1   Regarding Plaintiff's gastrointestinal impairments, while she visited the ER
2   many times complaining of abdominal pain, the AR reflects treatment through pain
3   medication, as summarized above.  The ALJ correctly cited this conservative
4   course of treatment as a reason to discount Plaintiff's claim to suffer from
5   disabling pancreatitis.
6       While Plaintiff elected to have back surgery in August 2018, her treatment
7   for back pain between her alleged onset date and August 2018 was minimal.
8   During the relevant time period, Plaintiff did not complain significantly about back
9   pain until March 2018.  AR 1209.  Imaging studies from 2017 demonstrated only
10  mild degenerative changes (AR 1463), and even after her March 2018 slip and fall,
11  imaging did not reveal any serious back injury.  See AR 1494, 1503, 1219 (MRI
12  taken in June 2018 noting "no significant interval change" compared with 2017
13  lumbar spine MRI).  While Plaintiff testified that her slip and fall was the genesis
14  of disabling back pain (AR 96), neither the above-cited medical records nor her
15  ability to continue performing caretaker work support that.
16      In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's
17  chosen course of treatment undermined her allegations.
18                      b.  Inconsistent with Activities of Daily Living.
19      The ALJ gave significant weight to the December 2016 opinion of state
20  agency consultant Dr. Berry that Plaintiff could do light work as "consistent with
21  the record as a whole, including the claimant's activities of daily caring for her
22  three children and her mother."  AR 75, citing AR 162-70.  Plaintiff argues that
23  Plaintiff's ability to care for her children and mother have no tendency to
24  contradict her claim of disability, because (1) she only cared for her mother on a
25  part-time basis, and (2) her oldest child "presumably could help with the 10 and 5-
26  year old."  (JS at 13-14).
27      A claimant's ability to work during a period of claimed disability can
28  support a finding discrediting the claimant's subjective symptom testimony.  See

13

1   Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding ALJ provided clear
2   and convincing reasons for rejecting claimant's subjective testimony, including
3   claimant continuing to work "under the table" after his date last insured); Goff v.
4   Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (finding claimant's work as a part-time
5   kitchen helper during period of claimed disability diminished her credibility since
6   "[w]orking generally demonstrates an ability to perform a substantial gainful
7   activity"). The determinative issue is whether the claimant's part-time work is
8   inconsistent with the limitations asserted. Compare Sweeney v. Barnhart, 163 F.
9   App'x 580, 581 (9th Cir. 2006) (upholding ALJ's adverse credibility finding when
10  the Plaintiff's alleged limitations were inconsistent with her part-time work for
11  several months after surgery for carpal tunnel syndrome); with Forester v. Colvin,
12  22 F.Supp. 3d 1117, 1124-25 (D. Or. 2014) (finding ALJ erred in discrediting the
13  Plaintiff when her part-time work from home with flexible hours was consistent
14  with her assertion that she could only engage in sporadic activity).

15        Here, Plaintiff claimed disabling mental and physical impairments. AR 311.
16  This is inconsistent with her working for IHSS as a caretaker for her mother,
17  including helping her mother with taking medications and getting to medical
18  appointments. Plaintiff's ability to do laundry and grocery shopping for her
19  mother suggests that she had the mental and physical wherewithal to use public
20  transportation, interact with others without conflict, maintain a schedule of
21  working every day, and complete tasks independently, all weighing against her
22  claim of disabling impairments. While she only worked part-time, as explained by
23  Plaintiff at the hearing, she would have worked more hours as a caretaker if her
24  mother's condition had warranted it, such that IHSS would have authorized more
25  hours. AR 92; see Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (holding
26  that ALJ properly recognized that daily activities "did not suggest [the Plaintiff]
27  could return to his old job" but "did suggest that [the Plaintiff's] later claims about
28  the severity of his limitations were exaggerated").

Regarding Plaintiff's 17-year-old daughter, she was presumably attending high school during most or all of Plaintiff's period of claimed disability. She did not submit a statement describing how she helped with household chores or childcare, if at all. The ALJ could reasonably interpret Plaintiff's testimony that she lived with her three children, including a 10-year-old and a 5-year-old, as testimony that Plaintiff was primarily responsible for their care. Substantial evidence supports the ALJ's finding that Plaintiff's ability to ensure that her young children were clothed, fed, bathed, supervised, and transported to/from school daily is inconsistent with her claim of disabling impairments.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED:  August 13, 2020                    _____
                                           KAREN E. SCOTT
                                           United States Magistrate Judge